of the publicly quoted company, and 10% is dispersed among the individuals like Tanner and Evans, and in this case the boiler room brokers. So I agree with you that that could be a purpose, but in May 8 and the 20 prior transactions executed by Tanner and Evans, the individuals were not cashing out, but they wanted, for example, publicly quoted companies apparently have easier access to financing, and that was what CFE Trucking wanted to do. They wanted to finance a purchase, so they wanted to be publicly quoted is what the record reflects. The point I would like to emphasize with regard to the granting of a new trial to Evans is that he was properly convicted of the charged conspiracy and was not entitled to a new trial, even if he did not know of the boiler room. The conspiracy charged in the indictment charged fraud in the selling and buying of May 8 stock. The boiler room was not alleged to be an object of the conspiracy, but an object, or excuse me, an overt act or means of furthering the object of the conspiracy, again, that being fraud in the buying and selling of the May 8 stock. The Libren case, SEC versus Libren, 200F2nd 384, and that's a southern district in New York case in 2002. The facts of that case are remarkably similar to the May 8 transaction. A shell is created and sold for $150,000, which is the exact amount that Tanner insists on getting paid for the May 8 shell. And that, I would submit, is just sort of opens up the curtain to show that the creating of a shell and the selling of it for reverse mergers is a big problem in the markets. The Libren case also shows that, contrary to what Evans' attorney argued at trial, what he did in creating the shell and selling it is, in fact, a securities violation, a crime. To the government regulators who determined whether a corporation gets publicly quoted, they lied that May 8 was widely distributed among various shareholders. Evans and Tanner placed the stock into the initial private placement investors who were friends and family and acquaintances largely of Evans for one cent a share. Six months to a year later, when a shell was sold, Evans needed that shares back, and he would say, sell me back the shares. Pay $500 for stock. Six months later, get $1,000 back. There were times when Tanner and Evans failed to sell the shell, so they didn't ask for the stock back. But in May 8 and earlier transactions, they did, in fact, sell the shell. When they got the stock back from the initial private placement investors, they did not tell them, Tanner and Evans did not tell them that they were, in fact, the purchasers. So that is a material omission to the private placement investors. They testified they didn't know that Tanner and Evans were buying their stock back. They thought that somebody else was buying it. We have a securities regulator who testified that his agency, which he headed, would not have approved May 8 for public quotation if May 8, if they had known May 8 was controlled by Tanner and Evans. Counsel, I'm not connecting on your argument. Let me tell you why. I thought what I was supposed to be listening for was why the judge made a mistake that he should be reversed for in giving Evans a new trial. Because the judge reversed. It looks to me as though it's a discretionary judgment. He can make it in the interest of judgment. And he thought that Evans had a case to make that he was no guiltier than his maiden Annette and was just being tied in by a lot of phony stuff from Ruggiero and that he needed a separate trial to make his case and it had not been fairly presented. And it looks to me as though a district judge has discretion to do that. And I'm just not getting it. I mean, a lot of what you're telling me now, it's kind of like a jury argument. And, well, yeah, maybe so. But it doesn't go to the question that's in my mind. The judge eventually said, I don't believe Ruggiero's testimony about he calling Tanner, Tanner calling Evans, and Tanner mentioning to Evans with Ruggiero overhearing the New York boys don't want you selling stock. Cut it out. Okay. That's the part that the judge said, okay, I don't believe that at this point. And the point that I'm arguing to you today is even if the facts are as the judge believed, Evans was properly convicted of the securities. The question isn't whether Evans was properly convicted. But there's no manifest injustice if he was properly convicted. No. The question is whether the judge could grant him a new trial. There doesn't have to be any error in his conviction for him to get a new trial. The judge just has to think there was an injustice. Well, a judge has to feel that there's a manifest injustice of some type to warrant the granting of a new trial. I mean, and the judge's point, I mean, he may well have been convicted on the basis of the evidence submitted at trial. But considering the fact that a great proportion of the evidence was against Tanner and a very small proportion against Evans, that Evans really deserved to be separated out. Well, I would disagree that a great portion of it was only against Evans, because Tanner and Evans are linked all the way up through with the creation of Maidaid and the selling of Maidaid. Linked doesn't do it for me. I guess I'm linked to every felon I ever sentenced because he was only one removed from me. We were within ten feet of each other. I'm linked to him. What does that have to do? All right. To the extent that you might think that Evans, Evans knew that Maidaid was nothing more than the Nat Kaiser doing odd jobs. What, even without knowledge of the boiler room, what Evans did was he sold his stock in the open market for $7 a share prior to the merger with CFE Trucking. All right. So what does Evans know at that point? He knows that we have a shell called Maidaid. It consists of nothing but a neighbor who gets cash for doing odd jobs. And what does he do? That's a jury argument. Another way of arguing the case to a jury would be he's like every holder of stock in the late 90s in one of these Internet companies. It was nothing but a concept. And he thinks somebody is damn fool enough to buy stock for $12 a share. I'll sell it to him. I would like to direct the court's attention to United States v. Alston, A-L-S-T-O-N, 974 F. Second, 1206, and that was a 1992 case. And that's cited in the brief, but for a different proposition than what I'm about to explain. In that case, the court in fact addressed whether if the facts were as viewed by the district judge, whether there was manifest injustice and that the defendants should have been convicted. In that case, you had three dentists who were charged with a per se price-fixing charge. And the court looked at and said if these dentists got together, as the district judge viewed it, was there a crime? And the court eventually came to the conclusion that no, because the actus reus did not demonstrate the requisite mens rea. And I would submit to you that the actus reus of Evans demonstrates that the mens rea was evident in this case. And, again, I would cite the court to Libren that you don't need a boiler room for what Evans did to be the securities violation, the conspiracy charged in there. Your time is up, incidentally. If you want to have a moment to wind up and a moment for rebuttal. I'll do that, Judge. Thank you. Counsel? Your Honor, my name is Michael Seinel. I'm here on behalf of the appellee, Dennis Evans. Your Honor, it seems to me that the government is suggesting that you should review this case de novo and sit in the seat of the trial judge. I can't hear you. I'm sorry. Can you hear me now? Yes, but speak up. Okay. The acoustics aren't very good here. I think that the government is asking that you review this case de novo, as opposed for abuse of discretion, and sit in the seat of the trial judge and look at the evidence and say that he should have properly been convicted. And I don't think that's the test. In fact, I know that's not the test. In the government's brief. What is the test? It's an abuse of discretion test, Your Honor. All right. On that subject, the real question is whether or not the judge relied at least in part on Tanner's post-conviction statement. And the judge said that while the recent statements of Tanner do not qualify as newly discovered evidence, they do go to the weight of the verdict in the interest of justice analysis. Does that not seem as if he is taking into consideration the post-conviction statements of Tanner? It seems like it, Your Honor, but I'm going to tell you why that's not correct. In the law of logic or philosophy, we think of necessary requirements and sufficient requirements. His decision to give a new trial was not based upon the necessary conclusion that these post-sentencing statements were necessary to go forward and give a new trial. Yes, he did hear them. Yes, he did think about them. But what's telling is that in the government's motion to reconsider, after he had the opportunity to review the briefs and think about his decision in the totality of the case, he comes back and addresses that very issue. And if I could turn your attention to the excerpt, which I believe starts at 680, or excuse me, 783 of the excerpt. The court says, writes, although the government surmised that the decision might have been affected by newly discovered evidence, the court was well aware before ordering a new trial that the newly discovered evidence would not suffice. Now, the government argues in his brief, well, that means one of two things, that you considered it along with other things or that you didn't consider it at all. Well, if you didn't consider it at all, well, that belies your statement, which you had just read, Your Honor. I think that statement is kind of like dicta. You're on the bench. You're talking about a lot of things. It came out. But at the end of the day, that wasn't the gravement of your decision. In fact, it wasn't even really any part of your decision. And we know, we have evidence in the record to show that. For example, the judge states, from the beginning, I really question whether I should have done this. That was long before he ever heard of these Tanner statements. He should have severed. Correct, yes. He also said he had grave concerns when this was going to trial based upon this disparity of evidence. So we know before the statements came out, it was on his mind. And then he concludes by saying, he said, I knew I was going to rue the day that I didn't do the severance. So we know from the beginning he really questioned it. And then we also have that when he went along and overruled the Boutelet motion, he said, but listen, I'm still hanging on to whether this goes to the weight of the evidence for a conviction. So we know that these thoughts, these concerns could not have possibly been based on solely these statements that came afterwards. They had to have come before. And even if, even if it rolled through his mind, and as a human it's impossible. If you hear statements, if you hear statements, they are in your mind. But as a judge, he was able to separate this and think about it and deliberate, not just when he made his decision on the motion, but on the second go round after the government called him on it. And the government called him on it in their motion to reconsider. They said, we think you are making the mistake of considering these things. So he had the opportunity to digest that. So either the judge is lying when he says that he didn't consider it, or he didn't consider it, or it simply wasn't a necessary element for him to grant the new trial. Now, returning to the basis that he gave, he articulated them in his, in the hearing, which is on, is in the excerpt. At 680, he articulates his reasons. Now, according to the standard of review, which the government concedes is the abuse of discretion standard, in their brief on page 30, we have to look at what is within the ambit of the district court's discretion. And the case law tells us that the district court may weigh the evidence and evaluate the issues of credibility of the witnesses. That's exactly what the judge did. In both the hearing and then on his order after the motion to reconsider, he stated, I really questioned the woman. She was a widow. She was all over the place on memory. I didn't think she was credible in that sense. He said he questioned Ruggiero because he was a crook. And he really questioned this phone call. And he, that is within his province to question credibility of witnesses when deciding on a motion to reconsider. That's within his province, is that 13th juror. And that's what he did. Now, we also. Go a little further. He also said that he thought the government had fooled him when he was considering severance before the trial. And they told him they'd be able to, they'd have evidence tying Evans to every aspect of the conspiracy and turned out not to be true. Right. He did say that as well. So he thought he'd made a mistake in reliance on that representation. That's correct. I mean, he really, you could see through the case, the judge was struggling with it. I mean, there was two times Bugele came up and he held on after his decision on Bugele to say, but he cautioned the government, I'm going to hold on to this. It was out there. So to say that this decision was based on the newly, the new testimony or this new evidence is incorrect. Now, if, because we're running out of time, if it was based on the new evidence or this new testimony and then the issue is, is that new evidence, I don't think Diggs says it's not, nor is the Reyes case. Because going through Mr. Gentile's brief, he outlines why he believes all five elements of Rule 33 have been met. And I don't believe Diggs stands for this proposition that any co-conspirator's statement is out. I think it stands for the proposition that you follow Rule 33 and the five elements set forth in the Diggs case. Because in Diggs and in Reyes, they explained what of those five elements weren't present. If we take the district court at its word of what it said it was doing, then we don't reach that issue, right? Agreed. Agreed. I agree with that. So with one minute left, we're left with this burden on the government to come here and tell you that this Court manifestly abused its discretion, manifestly. And the best it can offer you is that it says you have to surmise. You have to surmise that he's not telling the truth when he says he didn't rely on the statements because he discussed them and part of the hearing that's off the cuff when you're at a hearing and you're talking. But he had a chance to really dig into his heart and decide, is that what this judge is doing? He had a chance to review that motion of reconsideration when that very issue was raised and say, that's not what I did. Thank you. Thank you, counsel. Counsel, you used up your time, but take one minute. Okay. Let's take the district judge at his word, believe everything he says, and he says, one of the reasons I'm granting the new trial is because of variance. And at page 28 of our opening brief, we demonstrate that variance was not in the first motion. Variance was raised in the second, the new trial motion. The Court did not have jurisdiction to grant a new trial on an issue not raised in the first motion. The Court said. It doesn't say exactly what you said he said. It says the matter of variance. One of the reasons I'm granting the new trial is variance. He says there is also the matter of variance. And then he goes on in that paragraph to say the indictment alleged Evans' participation in a single global conspiracy. The proof didn't back that up. It showed smaller ones, government-induced conflicted evidence, proof of his knowledge of the pump and dump aspect was almost nonexistent. So it looks to me as though you're overstating what he says so that you can show that it's wrong. Well, I guess what I'm attempting to persuade you is that in granting the new trial, the Court discussed something there was no reason to discuss because it wasn't raised in the first motion. If you look only at the first motion, if you take the Court at its word that he put blinders on with regard to Tanner's post-verdict statements and counsel's second motion, if you put blinders on and look only at the first motion, variance is not alleged as a ground for a new trial. And what I'm trying to persuade you is that that is one. He's using variance to explain why he made a mistake in not granting the severance beforehand. Well, he can't do that because it wasn't alleged in the first new trial. He can't grant a new trial on a ground not raised in the first motion. He lacks jurisdiction to do that. That's the point we're trying to make is that the Court, in granting a new trial, cited variance as a ground for granting a new trial, among other reasons, I'll yield that, but he didn't have jurisdiction to grant a new trial based on variance because variance wasn't alleged in the first motion. Thank you, counsel. United States v. Evans is submitted and we're adjourned until 9 a.m. tomorrow. Thank you. The Court for this session is adjourned. Thank you. The Court is adjourned.
judges: D.W. Nelson, Kleinfeld, Gould